AUSA:  Shankar Ramamurthy    Telephone:  (202) 924-5368

AO 106 (Rev. 04/10)  Application for a Search Warrant    Special Agent:  Michael Pemberton    Telephone:  (313) 670-9117

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. |
| *or identify the person by name and address)* | ) | |
| 5472 Schaefer Road | ) | 2:21-mc-50881 |
| Dearborn, Michigan 48126 | ) | Judge: Goldsmith, Mark A. |
| | | Filed: 06-17-2021 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A-3.

located in the _____Eastern_____ District of _____Michigan_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT A.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [x] evidence of a crime;
- [x] contraband, fruits of crime, or other items illegally possessed;
- [x] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1347 | Health Care Fraud |
| 18 U.S.C. § 1343 | Wire Fraud |

The application is based on these facts:

See attached AFFIDAVIT.

- [ ] Continued on the attached sheet.
- [ ] Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael Pemberton, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:  June 17, 2021

*Judge's signature*

City and state:  Detroit, MI     Hon. Patricia T. Morris     U. S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH
OF:

5472 Schaefer Road
Dearborn, Michigan 48126

**Filed Under Seal**

Case No. _____

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Pemberton, Special Agent for the Department of Health and Human
Services, Office of the Inspector General, being duly sworn, depose and state as
follows:

**INTRODUCTION**

1.     I am a Special Agent with the United States Department of Health and
Human Services ("HHS"), Office of Inspector General ("OIG"), assigned to the
Detroit, Michigan, Field Office. I joined the United States Air Force in 1995 and
served nearly 13 years on active duty. In 2000, while on active duty, I graduated
from the Air Force Office of Special Investigations ("AFOSI") Academy at
Andrews Air Force Base, Maryland. I was an AFOSI Special Agent for the last

seven years of my Air Force career. From August 2008 to June 2015, I was a Special Agent with the United States Environmental Protection Agency ("EPA"). Upon becoming an EPA Special Agent, I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center at Glynco, Georgia.

2.      I have been a Special Agent with HHS-OIG since June 2015. As a Special Agent with HHS-OIG, I am responsible for investigating violations of United States federal law, including, but not limited to Title 18, United States Code, Section 1347 (Health Care Fraud) and Title 18, United States Code, Section 1343 (Wire Fraud). In connection with investigating these offenses, I have participated in the execution of search warrants for documents and other evidence in cases involving violations of these offenses, including at medical facilities, such as pharmacies, and individuals' residences.

## PURPOSE OF THE AFFIDAVIT

3.      This affidavit is written in support of an application to search the premises of:

> a. Drug Max, Inc. ("Drug Max"), located at 5472 Schaefer Road, Dearborn, Michigan 48126 ("Subject Premises").

4.      For the reasons stated below, there is probable cause to believe that records are stored at the Subject Premises that are related to a conspiracy to defraud

2

the Medicare and Medicaid programs, as well as Blue Cross Blue Shield of Michigan ("BCBS") at Drug Max.

5.      As discussed herein, the statements in this affidavit are based upon information I learned during the investigation, to include information provided to me by other law enforcement agents, and my experience and background as an HHS-OIG Special Agent. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe evidence of crime, fruits of crime, contraband, and other items illegally possessed in violation of the aforementioned federal laws are located at the Subject Premises.

6.      As discussed herein, there is probable cause to believe that certain items and property are located within the Subject Premises, including but not limited to financial records, patient files, and other evidence and fruits and instrumentalities of violations of:

      A.      Title 18, United States Code, Section 1347, Health Care Fraud;

      B.      Title 18, United States Code, Section 1343, Wire Fraud.

## <u>VIOLATION STATUTES</u>

7.    Title 18, United States Code, Section 1347, prohibits health care fraud: Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—

(1)  to defraud any health care benefit program; or

(2)  to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

8.    Title 18, United States Code, Section 1343, prohibits wire fraud: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

9.    Title 18, United States Code, Section 24(b), defines a "health care benefit program" as, among other things, "any public or private plan . . . affecting

4

commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service, for which payment may be made under the plan."

## THE MEDICARE AND MEDICAID PROGRAMS

10.     The Medicare Program ("Medicare") is a federally funded health care program providing benefits to persons who are sixty-five years of age or older or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the Department of Health and Human Services ("HHS"). Individuals who receive Medicare benefits are Medicare "beneficiaries."

11.     Medicare is a "health care benefit program," as defined by 18 U.S.C. § 24(b).

12.     Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Medicare Part B helps pay the cost of physician services, medical equipment and supplies, and other health services and supplies not paid by Part A. This investigation involves Medicare Part D, prescription drug benefits.

13.     A pharmacy can participate in Medicare Part D by entering into a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers ("PBMs"). A PBM acts on behalf of one or more Medicare drug plans.

Through a plan's PBM, a pharmacy can join the plan's network. When a Medicare Part D beneficiary presents a prescription to a pharmacy, the pharmacy submits a claim either directly to the plan or to a PBM that represents the beneficiary's Medicare drug plan. The plan or PBM determines whether the pharmacy is entitled to payment for each claim and periodically pays the pharmacy for outstanding claims. The drug plan's sponsor reimburses the PBM for its payments to the pharmacy. PBMs sometimes contract with Pharmacy Services Administrative Organizations ("PSAOs") to administer some of its services, such as payments.

14.     CVS Caremark, OptumRx, and Express Scripts are three of several PBMs. CVS Caremark processes and adjudicates claims electronically in Arizona. OptumRx and Express Scripts process and adjudicate claims electronically outside the state of Michigan.

15.     Medicare, through CMS, compensates the Medicare drug plan sponsors and pays the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments are called capitation fees. The capitation fee is adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceed that beneficiary's capitation fee, Medicare reimburses the sponsor for a portion of those additional expenses.

16.     By becoming a participating provider in Medicare, enrolled providers agree to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

17.     Medicare providers are required to maintain all records that disclose the extent of services provided and significant business transactions for a period of six years.

18.     Qlarant is the Medicare Part C and Part D program integrity contractor for CMS under the National Benefit Integrity Medicare Drug Integrity Contract ("MEDIC"). Qlarant's role is to detect, prevent, and investigate allegations of fraud, waste, and abuse in the Part C (Medicare Advantage organizations) and Part D (prescription drug coverage) programs on a national level.

19.     The Michigan Medicaid Program ("Medicaid") is a federal and state funded health care program providing benefits to individuals and families who meet specified financial and other eligibility requirements and certain other individuals who lack adequate resources to pay for medical care. CMS is responsible for overseeing the Medicaid program in participating states, including Michigan.

Individuals who receive benefits under the Medicaid program are also referred to as "beneficiaries." Medicaid claims are submitted to PBMs that process these claims electronically outside the state of Michigan.

20.    Medicaid covers the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid are reimbursements to pharmacies for the provision of prescription drugs. Generally, Medicaid covers these costs if, among other requirements, they are medically necessary and ordered by a physician.

## BLUE CROSS BLUE SHIELD OF MICHIGAN

21.    BCBS is a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan.  BCBS provides health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

22.    BCBS has agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

23.    BCBS is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

## SUBJECT PREMISES

### Drug Max

24.     Drug Max is a registered business entity with the Michigan Department of Licensing and Regulatory Affairs ("LARA"). Leila Fawaz ("Fawaz") organized Drug Max on June 26, 2001. According to the Articles of Organization, Fawaz was also the resident agent. Drug Max's 2020 annual report listed Fawaz as the resident agent and the address as 5472 Schaefer Road, Dearborn, Michigan 48126. This is the "Subject Premises."

25.     On June 4, 2020, Fawaz filed Pharmacy Application and Controlled Substance Application renewal forms for Drug Max electronically with LARA Bureau of Professional Licensing ("LARA BPL"). She stated that she was both the Owner and the Operations Manager of Drug Max. She also stated that she was the Pharmacist in Charge of Drug Max. Finally, she stated that she kept all records pertaining to the pharmacy, including records for prescriptions dating back at least five years, at Subject Premises. She signed the applications and attested to their truth.

26.     According to July 2015 and July 2018 provider certifications that Drug Max provided to Express Scripts, one of the PBMs associated with Drug Max, the practice address for Drug Max is the Subject Premises and has been since at least approximately July 2009. The provider certifications list Fawaz as the 100% owner and Pharmacist in Charge (PIC) at Drug Max.

9

27.     On June 1, 2021, I went to Drug Max and verified it is currently located at Subject Premises.

## FRAUD SCHEME

28.     A common pharmacy fraud scheme is to bill Medicare, Medicaid, and other health insurers for medication that the pharmacy does not actually dispense to patients. Put another way, at a high-level, the pharmacy is submitting a higher volume of medication in claims to Medicare, Medicaid, and other insurers than it purchased during the relevant period; based on my experience and training, this is often referred to as a "shortage" scheme. This is indicative of fraud because a pharmacy cannot dispense more medications than it has purchased. Typically, although not always, Medicare and Medicaid pay significant sums for these "shortage" medications. For example, inhalers and pain creams are common shortage medications because insurers may pay hundreds of dollars for those medications. However, pharmacies can bill but not dispense any medication. Over the course of the last four-plus years I have investigated shortage schemes.  As part of my shortage investigations I interviewed many beneficiaries, who have told me that both expensive and inexpensive medications (ranging from inhalers like Advair, Symbicort, QVAR, Spiriva, and HIV medication to creams and other items) were billed to Medicare, Medicaid, and other insurers that they never received from a particular pharmacy.

10

29.     Fawaz, the owner/operator of Drug Max, is believed to have submitted or caused to be submitted false and fraudulent claims at Drug Max through interstate wires from Michigan to Medicare, Medicaid, BCBS, and other insurers. The claims were processed and adjudicated electronically by CVS Caremark, OptumRx, and Express Scripts, among other PBMs, outside the state of Michigan.

## PROBABLE CAUSE FOR SUBJECT PREMISES
### Fraud Scheme at Drug Max

30.     Between January 1, 2014, through April 23, 2019, Fawaz, through Drug Max, submitted claims to Medicare for the reimbursement of prescription drugs that she neither ordered nor dispensed to beneficiaries. The evidence described in detail below establishes probable cause that Fawaz submitted claims to Medicare, Medicaid, BCBS, and other insurers, and was reimbursed at least $2,824,319.35 for prescription drugs she did not order or dispense during this period.

### Qlarant Invoice Reconciliation

31.     I requested drug purchase records and received responses from the pharmaceutical wholesalers used by Drug Max, which are listed below. I furnished all of the wholesaler records and Medicare and Medicaid data that I received to Qlarant and requested an invoice review for the period of January 1, 2014, through April 23, 2019. Qlarant compared invoices for Drug Max's drug purchases to Medicare and Medicaid claims data for this period.

32.     On January 21, 2021,[1] Qlarant provided the following summary of its invoice review:

**Wholesalers with Supportive Invoices:** Alpine, Anda, Auburn, Cardinal Harvard, Cardinal Health, GPW, H&H, IPC, Keysource, MatchRx, McKesson, Payless, Pharmsource, Prescription Supply, Sunrise and Top Rx

**Date Range of Invoice Review:** 1/1/2014 – 4/23/2019

**Number of Drugs Reviewed:** 3,405

**Number of Drugs with Shortages:** 1,669

**Approximate Loss to Medicare:** $2,584,350.09

**Approximate Loss to Medicaid:** $239,969.25

**Approximate Combined Loss to Medicare and Medicaid:** $2,824,319.35

33.     Based on the analyses of Qlarant, I created the following summary for Drug Max's top-ten drug shortages by approximate overall dollar loss to federal health care programs.

---

[1] Qlarant provided an initial invoice review summary for Drug Max in December 2020.  That summary included an analysis of the top 60% of medications that Drug Max had billed to Medicare and Medicaid.  Qlarant's updated invoice review from January 2021, shown below, includes an analysis of 100% of the medications that Drug Max billed to Medicare and Medicaid.

| Description | Approximate Dollar Loss-Overall |
|---|---|
| LANTUS SOLOSTAR 100 UNIT/ML | -$192,621.60 |
| VICTOZA 3-PAK 18 MG/3 ML PEN | -$129,503.01 |
| VICTOZA 2-PAK 18 MG/3 ML PEN | -$109,072.17 |
| SPIRIVA 18 MCG CP-HANDIHALER | -$107,217.00 |
| NOVOLOG 100 UNIT/ML FLEXPEN | -$98,465.97 |
| LEVEMIR FLEXTOUCH 100 UNIT/ML | -$89,477.46 |
| SYMBICORT 160-4.5 MCG INHALER | -$68,244.12 |
| ADVAIR 250-50 DISKUS | -$59,514.00 |
| ADVAIR 500-50 DISKUS | -$59,130.60 |
| BASAGLAR 100 UNIT/ML KWIKPEN | -$51,086.82 |

34.    In sum, Qlarant concluded that Drug Max's inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid for at least 1669 of the 3405 drugs selected for the analysis. Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid Drug Max approximately $2,824,319.35 for medications that Drug Max did not have sufficient inventory to dispense. The shortage drugs that caused the highest dollar loss were Lantus Solos Injections 100/ml, Spiriva Cap Handihaler, and Victoza Injections 18mg/3ml.

## BCBS Shortage at Drug Max

35.    On May 18, 2021, based on the Medicare and Medicaid shortage medications identified by Qlarant, BCBS provided a financial impact statement indicating that BCBS paid approximately $171,464.15 in claims submitted by Drug Max for those shortage medications over the same period as Qlarant's analysis.

13

## Drug Max Beneficiary Interviews

## B.R. (Medicaid Beneficiary)

36.    I interviewed B.R., a Medicaid beneficiary who used Drug Max as his/her pharmacy. I reviewed Drug Max's Medicaid claims with B.R. as they pertained to him/her. B.R. stated s/he never received pregabalin from Drug Max on September 9, 2020, despite it being billed to his/her Medicaid insurance by Drug Max.

37.    B.R. has received medication from Drug Max since at least 2010 and for the duration of the fraud period. S/he told me that her pharmacist was Fawaz and that s/he routinely discussed his/her medication with Fawaz.

38.    B.R. told Fawaz on several occasions to stop filling prescriptions but Fawaz continued to dispense the prescriptions medications. For example, B.R. only took Metformin HCL 500 mg tablets for one month, but continued to receive the medication for two or three more months.  Medicaid data shows that Drug Max billed B.R. for Metformin HCL 500 on at least fourteen occasions between November 2012 and July 2018.

39.    B.R. also told me that on several occasions Fawaz filled discontinued prescriptions for him/her, and B.R. returned the medications.

14

## H.B. (Medicare Beneficiary)

40.     I also interviewed H.B., a Medicare beneficiary who used Drug Max as his/her pharmacy.

41.     H.B. received his/her prescriptions from Drug Max from at least February 2017 through January 2020. H.B. stated he/she has only ever received Victoza as a two pack and he never received a three pack of Victoza from Drug Max. Claims data reflects that Drug Max billed for Victoza for H.B. from at least February 2017 through January 2020.

42.     Claims data reflects that on at least two occasions, Drug Max billed H.B.'s Medicare insurance for Victoza Inj 18 mg/3ml (3-Pak): February 23 and April 14, 2017.

43.     Victoza 3-pak was the number two top shortage drug for Drug Max, representing $129,503.01 of the total shortage amount. The Victoza three pack was reimbursed by Medicare at a rate of $746.39 per prescription in 2017, while the Victoza two pack was reimbursed by Medicare at rates between $497.92 and 645.75 per prescription between 2017 and 2020.

## A.R. (Medicaid Beneficiary)

44.     Agents interviewed A.R., a Medicaid beneficiary who used Drug Max as his/her pharmacy beginning in at least 2010.  Claims data reflects that Drug Max billed H.B.'s Medicaid insurance for Victoza 13 times in a span of 12 months in both

2017 and 2019. These 12-month periods each had billing that occurred in the month before and the month after the 12-month period, meaning 13 claims were submitted in the one-year span (see tables below). In particular, A.R. received two prescriptions in a month on July 2017 and July 2019.

45.     A.R. stated he/she only received Victoza once per month and did not receive any extra one-month supplies from Drug Max. A.R. only received Victoza 24 times over 2017 and 2019, combined, but was billed for 26 by Drug Max.

**Drug Max Victoza Medicaid Claims for A.R. (2017 and 2019)**

| Service Date | Drug | Days Supply | Paid Amount |
|---|---|---|---|
| 1/18/2018 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 12/19/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 11/20/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 10/23/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 9/25/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 8/29/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 7/31/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 7/5/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $809.53 |
| 6/5/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $750.38 |
| 5/5/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $750.38 |
| 4/5/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $750.38 |
| 3/7/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $750.38 |
| 2/3/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $750.38 |
| 1/3/2017 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $750.38 |
| 12/2/2016 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | $750.38 |

| Service Date | Drug | Days Supply | Paid Amount |
|---|---|---|---|
| 1/18/2020 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 944.39 |
| 12/20/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 11/21/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 10/24/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 9/26/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 8/28/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 7/29/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 7/1/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 5/31/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 5/2/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 4/3/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 3/7/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 2/4/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 899.46 |
| 1/6/2019 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 849.34 |
| 12/14/2018 | VICTOZA 3-PAK 18 MG/3 ML PEN | 30 | 849.34 |

## Medicare Reimbursements

46.     Records obtained from PBMs Express Scripts and Optum included copies of negotiated checks issued by the PBMs to Drug Max constituting Medicare reimbursements. The checks date back to at least January 2014 and shows that Medicare reimbursements were deposited into at least the following bank accounts:

      a.     Comerica Bank Account No. X0894;

      b.     J.P. Morgan Chase Bank Account No. X0442.

47.     Records obtained via grand jury subpoena from Comerica Bank show that Fawaz opened Bank Account No. X0894 on or before July 2000 and has

remained a signatory on the account until present. Fawaz signed the signature card for the account as "Owner" of Drug Max.

48.     Grand jury records from Comerica Bank Account No. X0894 also show that the account was used to purchase drugs from wholesalers, including McKesson. Between January 2014 and February 2019 over $6.1 million was used to purchase drugs to McKesson from Bank Account No. X0894.

49.     Records obtained via grand jury subpoena from J.P. Morgan Chase Bank show that Fawaz opened Bank Account No. 0442 in June 2011 and has remained a signatory on the account until present. Fawaz signed the signature card for the account as "President" of Drug Max.

## Evidence of Drug Max Records Located at Subject Premises

50.     Fawaz has repeatedly stated to both LARA BPL and Medicare that she is in compliance with laws and regulations requiring retention of documents related to prescriptions drugs and that those records are located at Subject Premises. Most recently, in June 2020, Fawaz attested to LARA BPL that she maintained prescription records, sales records, prescription labels, original prescriptions, central record keeping for controlled substances, Schedule II controlled substance invoices, and controlled substance inventories at Subject Premises.

51.     Based on the above documentation, events, and interviews, there is probable cause that Drug Max's records are located at the Subject Premises.

## CONCLUSION

52.     Based on the foregoing, there is probable cause to believe, and I do believe, that the Subject Premises will contain the items set forth in Attachment B, which constitute evidence, fruits of crime, contraband, and/or instrumentalities of the violations of Title 18, United States Code, Section 1347 (Health Care Fraud), and Title 18, United States Code, Section 1343 (Wire Fraud).

## REQUEST FOR SEALING

53.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Michael Pemberton, Special Agent
U.S. Department of Health and Human
Services – Office of Inspector General

Sworn to before me and signed in my
presence and/or by reliable electronic means.

Hon. Patricia T. Morris
United States Magistrate Judge

Dated:   June 17, 2021

**ATTACHMENT A – PREMISES TO BE SEARCHED**

Premises to be searched are:

**<u>Subject Premises</u>**

Subject Premises, depicted below, is located at 5472 Schaefer Road, Dearborn, Michigan 48126, and all buildings, structures, and appurtenances thereof. This address is located in a mixed commercial area surrounded by other buildings and lots. The building is composed of tan brick building material. A sign located above the main entrance reads "Drug Max" in red lettering.  The numbers "5472" appear on the window over the main entrance.  This premises is located next door to Nadine Travel on the east side of Schaefer Road.



**ATTACHMENT B**

## I.   **ITEMS TO BE SEIZED**

1.     The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Section 1347 (Health Care Fraud) and Title 18, United States Code, Section 1343 (Wire Fraud), namely from January 2014 to April 2019:

a)  All records related in any way to patients of any of the above persons or businesses, including, without limitation, the following type of records: patient charts, files, records, insurance cards, licenses, identification cards, treatment cards, prescription records, patient ledger cards, patient complaints, patient sign-in sheets, appointment books, telephone logs, physician notes, nursing notes, medical assistant notes, original patient or referral source listings.

b)  All documents constituting, concerning, or relating to bills, invoices and claims for payment or reimbursement for services billed to insurance companies, including Medicare, for any patients.

c)  All financial and tax-related books, records and documents related in any way to the above persons or businesses, including, without limitation:

23

i.    Bank accounts, money market accounts, checking accounts, equity line of credit, investment accounts, stock fund accounts, bonds or bond funds; including deposits and disbursements, canceled checks or drafts, electronic transfers, ledgers, loan statements, and loan agreements;

ii.   Credit/Automatic Teller Machine/Debit card accounts;

iii.  All corporate, business, and personal tax returns, including, without limitation, any quarterly employment tax returns, withholding records, W-2s, and any Internal Revenue Service Form 1099s;

iv.   All loan and credit information, including, without limitation, any letters of credit, revolving credit arrangements, loans, loan applications, financing arrangements, factoring arrangements, promissory notes, leases, or any other documents concerning sources of borrowed funds, including any applications;

v.    All information relating to the purchase, titling and insurance of vehicles, real estate and other assets, including safe deposit boxes and keys;

vi.   All financial statements, accounts payable/receivable, and credit reports.

d) All records and other items relating to the ordering, maintenance, or dispensing of all medications, including controlled substances in Schedules II, III, IV, and/or V.

e) Documentation of all patient appointments or scheduling and patient sign-in sheets.

f) All documents consisting, concerning or relating to all current and former employees, including, without limitation, personnel files, employee rosters, names, addresses, telephone numbers, email addresses, time cards or similar records, expense reports, training information, certification verification, salary and compensation information, disciplinary records, licensure records, job applications, job descriptions, employment agreements and W-2 forms.

g) All documents constituting, concerning or relating to work and personal diaries, calendars, logs, appointment books, and schedules.

h) All invoices and supporting documentation evidencing monies owed to or received from any of the above referenced individuals or business.

i) All contracts, billing agreements, professional services agreements, or any other contracts between the above referenced individuals or business, and any other individual, company, physician or billing company.

j)  All Medicare handbooks, manuals, instruction materials, newsletters or other Medicare publications.

k)  Records of control over other areas such as storage units where financial, medical or other billing records may be maintained.

l)  Records of control of the premises and things described, namely, utility bills, telephone bills, rent or lease records pertaining to or evidencing ownership or control of the premises to be searched.

m) Organizational or corporate papers filed with the appropriate state agencies and any amendments thereto, including, without limitation, articles of incorporation, by-laws and annual reports.

n)  All correspondence, including memoranda, letters, and electronic mailings (emails) concerning any of the records described in the previous paragraphs.

o)  Records related to assets or items of significant value reasonably believed to be proceeds of the illegal activity described in the affidavit for this search warrant.

AUSA: Shankar Ramamurthy                                    Telephone: (202) 924-5368
AO 93 (Rev. 11/13) Search and Seizure Warrant
Special Agent: Michael Pemberton                            Telephone: (313) 670-9117

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. |
| | ) | |
| 5472 Schaefer Road | ) | 2:21-mc-50881 |
| Dearborn, Michigan 48126 | ) | Judge: Goldsmith, Mark A. |
| | ) | Filed: 06-17-2021 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.


I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.


**YOU ARE COMMANDED** to execute this warrant on or before     July 1, 2021 _____     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     June 17, 2021   9:19 am _____        _____
                                                                 *Judge's signature*

City and state:     Detroit, MI _____            Hon. Patricia T. Morris     U. S. Magistrate Judge
                                                    *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*